UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JULIE MacLAY, as Personal Representative of the Estate of Lia Christine Hawkins, deceased,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>M/V SAHARA (ex OCEANOGRAPHER), IMO No. 6600826, her engines, tackle, rigging, equipment and other appurtenances, in rem; and G SHIPPING LTD., a foreign corporation organized and existing under the Laws of Malta,<br><br>　　　　　　　Defendants. | AT LAW AND IN ADMIRALTY<br><br>NO.<br><br>VERIFIED COMPLAINT IN REM AND IN PERSONAM TO FORECLOSE PREFERRED MARITIME TORT LIEN AND FOR COMPENSATORY AND PUNITIVE DAMAGES AND OTHER RELIEF<br><br>JURY DEMAND |

Plaintiff, Julie MacLay, in her capacity as the duly-appointed Personal Representative of the Estate of Lia Christine Hawkins, deceased, alleges as follows:

Nature of Action

1. This is a maritime survival and wrongful death action brought in rem and in personam to foreclose a preferred maritime tort lien against the M/V SAHARA, IMO No. 6600826 (the "Vessel"), and to recover compensatory, punitive and other relief to which Ms. Hawkins' Estate and family members are entitled on account of the wrongful death of Ms. Hawkins upon the navigable waters of the United States. Ms. Hawkins died

VERIFIED COMPLAINT IN REM AND IN PERSONAM TO FORECLOSE PREFERRED MARITIME TORT LIEN, ETC. - 1

MUNDT MACGREGOR L.L.P.
ATTORNEYS AT LAW
271 Wyatt Way NE, Ste. 106, Bainbridge Is., WA 98110
Telephone (206) 624-5950

on October 21, 2010 after falling overboard from the Vessel in the course of her employment aboard the Vessel.

## Jurisdiction and Venue

2. The Court has both diversity jurisdiction and admiralty jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 1333. Plaintiff is a citizen of the State of Washington (as was the decedent) and in personam defendant G Shipping Ltd. is a citizen of Malta, a foreign state. The amount in controversy exceeds $75,000.00. Plaintiff's claims are also admiralty and maritime claims within the meaning of Fed. R. Civ. P. 9(h) and thus within the Court's admiralty jurisdiction. Notwithstanding the concurrent bases of subject matter jurisdiction, Plaintiff elects to have all claims triable at law tried before a jury, with the general maritime law providing the governing rules of decision.

3. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b). A substantial part of the events or omissions giving rise to this action occurred in this judicial district and the Vessel is currently located within this judicial district.

## Parties

4. Plaintiff Julie MacLay is the mother of the decedent, Lia Christine Hawkins. The Superior Court of Washington for King County has duly appointed Plaintiff as the Personal Representative of her daughter's Estate. Plaintiff brings this action on behalf of the Estate and on behalf of all beneficiaries granted a right of recovery under the general maritime law for the wrongful death of Ms. Hawkins.

5. The in rem defendant Vessel is a 300 foot steel-hulled motor vessel, currently documented under Maltese flag and presently located in this judicial district.

6. In personam defendant G Shipping Ltd. ("G Shipping") is a foreign corporation organized and existing under the Laws of Malta. At all times material, G Shipping was the sole owner, owner pro hac vice, and/or operator of the Vessel.

## Factual Allegations

7. Originally known as the OCEANOGRAPHER, the Vessel formerly sailed under U.S. flag as an oceanographic research vessel owned and operated by the United States Government. After decommissioning in 1996, the Vessel was renamed the M/V PROTECTOR and served for several years as a breakwater at the Kirkland Bay Marina in Kirkland, Washington.

8. On information and belief, G Shipping acquired ownership of the Vessel in 2009 with the intention of converting the Vessel to a luxury pleasure yacht for the personal recreational use and enjoyment of Emanuele Garosci. Mr. Garosci is, and at all material times was, the principal of G Shipping. Mr. Garosci is an Italian national known throughout the world as a developer and designer of luxury hotels. He also is a former race car driver. See, e.g., http://www.youtube.com/watch?v=WWsynlQTEY.

9. The scope of the conversion project on the Vessel was substantial. However, Mr. Garosci and G Shipping did not contract with a shipyard or other vessel repair company to perform the conversion work. Instead, upon acquiring the Vessel in 2009, Mr. Garosci hired Ms. Hawkins and a handful of other individuals to assist him in pursuing the conversion of the Vessel to a luxury pleasure yacht. Ms. Hawkins was hired exclusively to perform administrative and clerical duties on behalf of G Shipping, including purchasing, accounting, payroll, insurance, regulatory matters, documentation matters, and other administrative tasks pertaining to the Vessel and the ongoing conversion work. Ms. Hawkins originally had an office on land and only infrequently needed to board the Vessel to carry out her day-to-day responsibilities.

10. After originally being hired to perform exclusively administrative tasks from a shore-side office, Ms. Hawkins was subsequently reassigned to an office aboard the Vessel. Although her primary duties remained administrative in nature, G Shipping periodically directed Ms. Hawkins to also perform general labor aboard the

VERIFIED COMPLAINT IN REM AND IN
PERSONAM TO FORECLOSE PREFERRED
MARITIME TORT LIEN, ETC. - 3

MUNDT MACGREGOR L.L.P.
ATTORNEYS AT LAW
271 Wyatt Way NE, Ste. 106, Bainbridge Is., WA 98110
Telephone (206) 624-5950

Vessel in support of the conversion work. This general labor frequently involved, among other things, assisting with the disposal of scrap metal and other debris being removed from the Vessel in furtherance of the conversion project.

11. Ms. Hawkins had no prior training or experience as a ship repairer or general laborer on ship repair projects. G Shipping, moreover, failed to provide her with adequate safety training, and failed to establish and implement appropriate policies, procedures, and protocols for safely disposing of scrap metal from the Vessel.

12. In the morning of October 21, 2010, Ms. Hawkins was assisting in the disposal of scrap metal being removed from the Vessel in the course of the conversion project. A shipping container had been placed on the dock adjoining the Vessel for use as a scrap metal receptacle. Ms. Hawkins and other employees had been instructed to dispose of the scrap metal by throwing it off an unprotected section of the Vessel's fourth-level deck, across the gap between the Vessel and the dock, and into the shipping container located on the dock below.

13. In the course of performing this work, Ms. Hawkins fell overboard off the unprotected deck some 15 feet above the dock, hit her head, fell into the water, and eventually drowned. Her body was recovered by divers the next day from under the dock in the area of the metal recycling container.

14. At the time of Ms. Hawkins' fall, she was not wearing a hard hat or a personal flotation device ("PFD"). She had not been instructed or trained to wear such safety equipment when performing scrap metal disposal aboard the Vessel.

15. At the time of Ms. Hawkins' fall, there had been no attempt to place the scrap metal receptacle or a smaller receptacle onto the fourth-level deck, or other safe location, so that Ms. Hawkins and other employees would not have to throw scrap metal off of the unprotected edge of the Vessel's fourth-level deck.

16. At the time of Ms. Hawkins' fall, no guardrail, safety chain, or other protective physical barrier was in place at the otherwise unprotected area of the fourth-level deck from which scrap metal debris was being thrown into the metal recycling receptacle on the dock below.

17. At the time of Ms. Hawkins' fall, no debris chute, slide, or other means of spanning the gap between the unprotected edge of the fourth-level deck of the Vessel and the scrap metal receptacle on the dock below was utilized.

18. At the time of Ms. Hawkins' fall, no safety skirt, net, or other protective device was in place to catch any person or any thing falling overboard from the unprotected fourth-level deck of the Vessel.

19. Throughout the course of her employment aboard the Vessel, the Vessel remained at berth on the Lake Washington Ship Canal and never embarked on a voyage.

20. Ms. Hawkins typically was compensated for her work aboard the Vessel by checks written on a G Shipping account.

21. Ms. Hawkins was 33 years old at the time her death. With respect to her immediate family, she is survived by her parents and three siblings.

Count 1: Maritime Survival Claim for Negligence

22. Plaintiff realleges the allegations in the paragraphs above.

23. Although engaged in maritime employment aboard the Vessel, Ms. Hawkins was neither a crew member of the Vessel within the meaning of the Jones Act, 46 U.S.C. § 30104, nor a covered employee under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 901, et seq. (the "LHWCA"). Alternatively, even were Ms. Hawkins a covered employee under the LHWCA, her Personal Representative retains all rights and remedies at law and in admiralty against her employer and the Vessel

because, on information and belief, G Shipping has failed to secure payment of compensation under the LHWCA as required by 33 U.S.C. § 933(a).

24. As a maritime employer and owner of the Vessel, G Shipping owed a duty under maritime law to exercise reasonable care in order to avoid injury to Ms. Hawkins and others working aboard the Vessel.

25. G Shipping violated its maritime duty of care in that, among other things:

- it failed to provide adequate training to Ms. Hawkins and other employees aboard the Vessel;

- it failed to establish and implement appropriate policies, procedures, and protocols for employees to safely dispose of scrap metal from the Vessel;

- it failed to require that Ms. Hawkins and other employees utilize appropriate safety equipment, including hard-hats, personal flotation devices, fall protectors, and other equipment when disposing of scrap metal;

- it failed to place the scrap metal receptacle container or a smaller receptacle onto the fourth-level deck, or other safe location, so that Ms. Hawkins and other employees would not have to throw scrap metal and other debris off of the unprotected edge of the fourth-level deck of the Vessel;

- it failed to maintain an adequate guardrail, safety chain, or other protective physical barrier at the otherwise unprotected area of the fourth-level deck from which scrap metal debris was being thrown into the metal recycling receptacle on the dock below, in order to prevent employees from falling overboard;

- it failed to install a chute, slide or other means of spanning the gap between the unprotected edge of the fourth-level deck of the Vessel and the scrap metal receptacle on the dock below; and

- it failed to install a safety skirt, net or other protective device to catch any person or thing falling off the fourth-level deck of the Vessel above the scrap metal receptacle.

In each of these respects, and others, G Shipping failed to exercise the ordinary care required of a maritime employer and vessel owner to avoid exposing persons working aboard the vessel to the risk of injury or death.

26. As a proximate result of G Shipping's negligence, Ms. Hawkins suffered personal injuries and death.

27. Under maritime survival law, G Shipping is liable in damages for Ms. Hawkins' pre-death pain and suffering, funeral expenses, and lost future earnings.

Count II: Survival Claim for Unseaworthiness

28. Plaintiff realleges the allegations in the paragraphs above.

29. Although Ms. Hawkins was not a crew member of the Vessel, G Shipping nevertheless owed a strict and absolute maritime duty to Ms. Hawkins and other maritime workers aboard the Vessel to provide and maintain a seaworthy vessel.

30. G Shipping breached its maritime duty to provide and maintain a seaworthy vessel in that, among other things:

- it failed to provide adequate training to Ms. Hawkins and other employees aboard the Vessel;

- it failed to establish and implement appropriate policies, procedures, and protocols for employees to safely dispose of scrap metal from the Vessel;

- it failed to require that Ms. Hawkins and other employees utilize appropriate safety equipment, including hard-hats, personal flotation devices, fall protectors, and other equipment when disposing of scrap metal;

- it failed to place the scrap metal receptacle container or a smaller receptacle onto the fourth-level deck, or other safe location, so that Ms. Hawkins and other employees would not have to throw scrap metal and other debris off of the unprotected edge of the fourth-level deck of the Vessel;

- it failed to maintain an adequate guardrail, safety chain, or other protective physical barrier at the otherwise unprotected area of the fourth-level deck from which scrap metal debris was being thrown into the metal recycling receptacle on the dock below, in order to prevent employees from falling overboard;

- it failed to install a chute, slide or other means of spanning the gap between the unprotected edge of the fourth-level deck of the Vessel and the scrap metal receptacle on the dock below; and

- it failed to install a safety skirt, net or other protective device to catch any person or thing falling off the fourth-level deck of the Vessel above the scrap metal receptacle.

31. As a proximate result of G Shipping's breach of its maritime duty to provide and maintain a seaworthy vessel, Ms. Hawkins suffered personal injuries and death.

32. Under maritime survival law, G Shipping is liable in damages for Ms. Hawkins' pre-death pain and suffering, funeral expenses, and lost future earnings.

### Count III: Maritime Wrongful Death

33. Plaintiff realleges the allegations in the paragraphs above.

34. G Shipping's breach of its maritime duty of care and/or its maritime duty to provide and maintain the Vessel in a seaworthy condition resulted in the wrongful death of Ms. Hawkins.

35. Under maritime wrongful death law, G Shipping is liable in damages to Ms. Hawkins' parents and siblings, through Plaintiff as Personal Representative of Ms. Hawkins' Estate, for the loss of their society with their daughter and sister, including without limitation loss of love, affection, care, attention, companionship, comfort and protection.

### Count IV: Foreclosure of Preferred Maritime Tort Lien

36. Plaintiff realleges the allegations in the paragraphs above.

37. The personal injuries and death suffered by Ms. Hawkins by reason of the negligence of G Shipping and the unseaworthiness of the Vessel give rise to a preferred maritime tort lien enforceable in rem against the Vessel and its appurtenances, with rank and priority ahead of any and all other liens, claims and encumbrances whatsoever.

38. The Vessel is liable in rem for all survival and wrongful death damages recoverable herein, with the exception of punitive damages.

### Count V: Punitive Damages under Maritime Survival Law

39. Plaintiff realleges the allegations in the paragraphs above.

40. The acts and omissions of G Shipping described above constitute gross negligence and demonstrate a reckless or callous disregard for the safety of Ms. Hawkins and other maritime employees working aboard the Vessel.

41. Under maritime survival law, G Shipping is liable to Ms. Hawkins' Estate for punitive damages.

### Request for Relief

WHEREFORE, Plaintiff requests the following relief:

1. That the Court issue process directing the United States Marshal to arrest the Vessel and all its engines, tackle, rigging, equipment and other appurtenances and to hold the same pending further order of the Court;

2. That Plaintiff be awarded judgment in rem against the Vessel and its appurtenances for all survival and wrongful death damages awarded herein, excluding only punitive damages, in an amount to be determined at trial, together with prejudgment interest thereon as allowed by maritime law;

3. That Plaintiff be awarded judgment in personam against G Shipping for all survival and wrongful death damages recoverable under maritime law, in an amount to be determined at trial, together with prejudgment interest thereon as allowed by maritime law;

4. That Plaintiff be awarded judgment <u>in</u> <u>personam</u> against G Shipping for punitive damages, in an amount to be determined at trial;

5. That Plaintiff's preferred maritime tort lien be foreclosed and the Vessel and its appurtenances sold by the United States Marshal in accordance with law, with the proceeds therefrom applied first to *custodia legis* expenses and then to the preferred maritime tort lien of Plaintiff;

6. That Plaintiff be awarded its costs herein; and

7. That Plaintiff be awarded such other and further relief as the Court may deem just and proper.

DATED this 26th day of March, 2012.

MUNDT MacGREGOR L.L.P.


By s/ *J. D. Stahl*
J. D. Stahl
WSB No. 14113

GORDEN TILDEN THOMAS & CORDELL, LLP


By s/ *Mark Wilner*
Mark Wilner
WSB No. 31550

Attorneys for Plaintiff

## Verification

STATE OF WASHINGTON )
                                    ) ss.
COUNTY OF KITSAP      )

JULIE MacLAY, being first duly sworn, on oath deposes and says:

I am the duly-appointed Personal Representative of the Estate of Lia Christine Hawkins, deceased, and the Plaintiff in the above-referenced action. I have read the within and foregoing Verified Complaint In Rem and In Personam to Foreclose Preferred Maritime Tort Lien and for Compensatory and Punitive Damages and Other Relief, know the contents thereof, and believe the contents to be true and correct.

_Julie MacLay_
(signature)

SUBSCRIBED AND SWORN TO before me this 26 day of March, 2012.

_Laura Beth Waller_
(signature of Notary)

Laura Beth Waller
(printed name of Notary)

**Notary Public**
**State of Washington**
**LAURA BETH WALLER**
**My Commission Expires**
**October 15, 2015**

Notary Public in and for the State of Washington, residing at Kitsap County
My Commission expires 10/15/15.

U:\JDST\PLEADINGS\COMPLAINT (JDS REVISION 3-21-12)-4032-001A.DOC
VERIFIED COMPLAINT IN REM AND IN
PERSONAM TO FORECLOSE PREFERRED
MARITIME TORT LIEN, ETC. - 11

MUNDT MACGREGOR L.L.P.
ATTORNEYS AT LAW
271 Wyatt Way NE, Ste. 106, Bainbridge Is., WA 98110
Telephone (206) 624-5950