The Honorable Richardo S. Martinez

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JULIE MacLAY, as Personal Representative of the Estate of Lia Christine Hawkins, deceased,<br><br>Plaintiff,<br><br>v.<br><br>M/V SAHARA (ex OCEANOGRAPHER), IMO No. 6600826, her engines, tackle, rigging, equipment and other appurtenances, in rem; and G SHIPPING LTD., a foreign corporation organized and existing under the Laws of Malta,<br><br>Defendants. | <u>AT LAW AND IN ADMIRALTY</u><br><br>Case No.: C12-512 RSM<br><br>MOTIONS IN LIMINE OF DEFENDANTS G SHIPPING AND M/V SAHARA<br><br><u>NOTE ON MOTIONS CALENDAR</u>:<br>**Friday, March 29, 2013** |

The Defendants, G SHIPPING LTD and M/V SAHARA, submit the following ten motions in limine in advance of trial of the within action set to commence on April 8, 2013:

**MOTIONS IN LIMINE**

The purpose of a motion in limine is to obtain an early, preliminary ruling on the admissibility of evidence. *Woods v. Slater Transfer & Storage, Inc.*, 2010 U.S. Dist. LEXIS 95959, at *5, *2010 (D. Nev. 2010) WL 3433052 (D. Nev. Aug. 27, 2010). "Although the Federal Rules of Evidence do not explicitly authorize a motion in limine, the Supreme Court has held that trial judges are authorized to rule on motions in limine pursuant to their authority to manage trials." *Id.* WL 3433052 (D. Nev. Aug. 27, 2010); *see Luce v. United States*, 469 U.S. 38, 41 n.4, 105 S. Ct. 460, 83 L. Ed. 2d 443 (1984).

Motions In Limine
*MacLay v. M/V SAHARA & G Shipping*
Case No.: C12-512 RSM
Page **1** of **18**

**Kevin Beauchamp Smith**
**Attorney At Law**
4714 Ballard Avenue, NW, PMB 194
Seattle, WA 98107-4850
206-781-1657
KBEAUS@IX.NETCOM.COM

Judges have broad discretion when ruling on motions in limine. *See Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002). However, a motion in limine should not be used to resolve factual disputes or weigh evidence. *See C & E Servs., Inc. v. Ashland Inc.*, 539 F. Supp. 2d 316, 323 (D.D.C. 2008). To exclude evidence on a motion in limine "the evidence must be inadmissible on all potential grounds." *E.g.*, *Ind. Ins. Co. v. GE*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004). "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Hawthorne Partners v. AT&T Techs.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993). This is because although rulings on motions in limine may save "time, costs, effort and preparation, a court is almost always better situated during the actual trial to assess the value and utility of evidence." *Wilkins v. Kmart Corp.*, 487 F. Supp. 2d 1216, 1219 (D. Kan. 2007).

*Woods*, 2010 U.S. Dist. LEXIS 95959, at *5-6, *2010 WL 3433052 (D. Nev. Aug. 27, 2010).

1. Motion to exclude fact witnesses Marsha Zimmerman, Dan Lazerek, Vayna Boardman, Max Brown, Victor Heemstra and Jory Wong on the basis that their proffered testimony is not related to any legal issue in the case and further that their testimony is duplicative and cumulative of other listed witnesses.

2. To exclude witness Jim Ihler on the basis that said witness's testimony is based solely on a hypothetical alternative.

3. Motion to exclude witnesses Janae Hawkins and Jared Hawkins on the basis that their loss of comfort and society claims have been dismissed by this Court and further that any testimony on the remaining proffered subjects are duplicative and cumulative of the other witnesses who are testifying on behalf of plaintiff.

4. To exclude the testimony of Dr. Richard Cummins on the basis that his proffered testimony does not raise a triable issue on pain and suffering prior to death claim.

Motions In Limine
*MacLay v. M/V SAHARA & G Shipping*
Case No.: C12-512 RSM
Page **2** of **18**

**Kevin Beauchamp Smith**
**Attorney At Law**
**4714 Ballard Avenue, NW, PMB 194**
Seattle, WA 98107-4850
206-781-1657
KBEAUS@IX.NETCOM.COM

5. Motion to preclude expert Robert Moss' testimony that is not based upon plaintiff's earnings history.

6. Motion to reconsider the Court's assertion that comparative negligence is barred under 33 U.S.C. § 905 which is encompassed in part by affirmative defense #4 in the defendants' answer.

7. Motion to exclude G-Shipping's report to the United States Coast Guard as hearsay.

8. Motion to strike plaintiff's assertion of an unseaworthiness claim.

9. Motion to strike plaintiff's punitive damage claim.

10. Motion to strike *in rem* claim.

Plaintiff, as limited by this Court's Decision and Order filed on February 22, 2013, has the right to pursue only two (2) claims: maritime wrongful death of decedent Lia Hawkins and the loss of comfort and society to her parents, plaintiff Julie MacLay and plaintiff Bruce MacLay.

### MOTION #1
### STRIKE CUMULATIVE & DUPLICATIVE WITNESSES

According to the plaintiff's disclosures and pretrial statements, Julie MacLay and Bruce MacLay will both testify as to "Ms. Hawkins life history, character, education, job history and future plans; Ms. Hawkins relationships with her family members and the impact of her loss on those family members;" and with respect to Ms. MacLay only," her role and status as the personal representative of the Estate of Lia Christine Hawkins." In addition to those two (2) witnesses, plaintiff has identified Janae Hawkins, Vayna Boardman, Max Brown, Victoria Heemstra, Jared Hawkins and Marcia Zimmerman all of which are expected to testify as to "Ms. Hawkins life history, character, education, job history and future plans; Ms. Hawkins employment, duties, training

Motions In Limine
*MacLay v. M/V SAHARA & G Shipping*
Case No.: C12-512 RSM
Page **3** of **18**

Kevin Beauchamp Smith
Attorney At Law
4714 Ballard Avenue, NW, PMB 194
Seattle, WA 98107-4850
206-781-1657
KBEAUS@IX.NETCOM.COM

and work site aboard the SAHARA; Ms. Hawkins relationship with her family members and the impact and loss on those family members." It is patently obvious, that having those seven (7) witnesses, none of whom have claims that are cognizable in this litigation, are nothing more than an impermissible attempt to pile on a claim through cumulative evidence when that same testimony is also being induced from and presented by those two (2) family members, Bruce MacLay and Julie MacLay who actually have claims.

The admission of evidence lies in the sound discretion of the trial court. United States v. Kills Crow, 527 F.2d 158, 160 (8th Cir. 1975) citing Bond v. Local 823, Teamsters, 521 F.2d 5, (8th Cir. 1975); Lowry v. Black Hills Agency, Inc., 509 F.2d 1311, 1313-14 (8th Cir. 1975). A district court decision on matters concerning the admissibility of evidence will be overturned on appeal only if the court has abused its discretion. Id. citing United States v. Skillman, 442 F.2d 542, 551 (8th Cir.), cert. denied, 404 U.S. 833 (1971). Federal Rule of Evidence 403 states that relevant evidence may be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. Therefore, the Court may exclude relevant evidence if its probative value is substantially outweighed by a danger of prejudice. Fed. R. Evid. 403.

Cumulative evidence is that which replicates or is duplicative of other admitted evidence. Hamling v. United States, 418 U.S. 87, 127 (1974). The district court has considerable discretion even with admittedly relevant evidence in rejecting that which is cumulative. United States v. Elksnis, 528 F.2d 236, 239 (9th Cir. 1975) citing Hamling v. United States, 418 U.S. 87, 127 (1974). Even if lay witness opinion evidence were deemed helpful and relevant by the district judge, he may still consider, under Fed. R. Evid. 403, whether such evidence should be excluded as "substantially

Motions In Limine
*MacLay v. M/V SAHARA & G Shipping*
Case No.: C12-512 RSM
Page **4** of **18**

Kevin Beauchamp Smith
Attorney At Law
4714 Ballard Avenue, NW, PMB 194
Seattle, WA 98107-4850
206-781-1657
KBEAUS@IX.NETCOM.COM

outweighed by the danger of unfair prejudice . . . or [the] needless presentation of cumulative evidence." See Fed. R. Evid. 403 citing <u>United States v. Hauert</u>, 40 F.3d 197, 202, footnote 4 (7th Cir. 1994).

Here, Plaintiff seeks to offer testimony from several lay witnesses regarding the effects of Lia Hawkins' death on her mother, Julie MacLay. Plaintiff's request to produce multiple witnesses to testify regarding these effects will not assist the jury and will instead be cumulative under Fed. R. Evid. 403 and would be prejudicial to the defendant. Plaintiff's multiple witnesses will testify regarding substantially the same information as each other and the testimony does not appear to be sufficiently unique to avoid a danger of cumulative evidence or waste of the court's time. Furthermore, this testimony would be irrelevant to the issues at hand, time-consuming, confusing, duplicative, and prejudicial, it should be excluded. To allow otherwise would effectively give Plaintiff multiple representation on the same issues and permit duplicative and repetitive examination and argument that would unfairly prejudice defendants. Therefore, introduction of this repetitive and duplicative evidence will create more confusion than enlightenment in the minds of the jury and must, therefore, be excluded.

For the reasons stated above, all of the witnesses identified as cumulative and duplicative must be precluded from testifying at trial.

**MOTION #2**
**<u>STRIKE SEPCULATIVE WITNESS</u>**

The plaintiff have asserted that Jim Ihler, Ihler Marine Services will testify as to the location of Ballard Marina's operations and crane lifting therein; prior crane lifting work with G-Shipping; discussions with G-Shipping regarding crane lifting operations and capabilities; and metal

Motions In Limine
*MacLay v. M/V SAHARA & G Shipping*
Case No.: C12-512 RSM
Page **5** of **18**

**Kevin Beauchamp Smith**
**Attorney At Law**
**4714 Ballard Avenue, NW, PMB 194**
**Seattle, WA 98107-4850**
**206-781-1657**
**KBEAUS@IX.NETCOM.COM**

recycling/disposal projects; inadequate experience and training of G-Shipping personnel for conversion of SAHARA; the metal recycling and disposal work its self; where Lia's body was recovered; lack of safety protocol; authentication of photographs of crane and Ballard marina." It should be noted, that with respect to any of the assertions that Mr. Ihler can testify as to crane operations, the incident involving Ms. Hawkins did not involve a crane or lifting work that would require a crane and as such, is irrelevant to any issue in this litigation. With respect to the issues of inadequate experience and training of G-Shipping's personnel or lack of safety protocols, Mr. Ihler has never been identified as an expert, has not produced or prepared a report and his testimony on such subjects would be a violation of Federal Rules of Evidence 701, 702 and 703.

Finally, with respect to his testimony on "where Lia's body was recovered" that information is irrelevant in a sense that where her body was allegedly brought ashore, by the team of county divers, does not indicate where her body was found; and further, plaintiff has already identified James Sosik, Jr., Office of the King County Medical Examiner to testify to "investigation of the discovery of Ms. Hawkins body on October 22, 2010."

## MOTION #3
## PRECLUDE OR LIMIT THE EXPERT
## TESTIMONY OF ROBERT MOSS

Under Federal Rule of Evidence 703, Mr. Moss has the obligation to analyze any losses for Lia Hawkins, not an average 33 year old. Mr. Moss testified that he performed her wage calculations based upon the average earnings of a single female, college graduate in the United States, which is $48,500.00 per year, despite the fact that Ms. Hawkins earning history for the six years he analyzed.(2005-2010) showed consistent earnings of between $29,200.37 and $30,948.00 per year, 30% less than the average earnings he used for his calculations. This further compounds

Motions In Limine
*MacLay v. M/V SAHARA & G Shipping*
Case No.: C12-512 RSM
Page **6** of **18**

Kevin Beauchamp Smith
**Attorney At Law**
4714 Ballard Avenue, NW, PMB 194
Seattle, WA 98107-4850
206-781-1657
KBEAUS@IX.NETCOM.COM

itself because in computing her personal consumption rate and thus that loss of earnings potential to her estate, a person earning $31,000 per year consumes a considerably larger percentage of their income than that same single person earning almost $50,000 per year. For that reason, Mr. Moss testimony must be stricken as unreliable.

# MOTION #4
# TO EXCLUDE THE TESTIMONY
# OF DR. RICHARD CUMMINS

Dr. Richard Cummins has been retained to testify at trial as an expert under Federal Rule of Evidence 702 on the issue of the conscious pain and suffering by Lia Hawkins prior to her death. It is well settled, under the general maritime law, including the law of this Circuit, as initially pronounced by the Supreme Court's decision in *Great Northern Ry. Co. v. The Capital Trust Co.*, 242 U.S. 144 (1916) in establishing the rule that "decedent must be conscious for an appreciable period of time after sustaining his injuries to allow recovery for pre-death pain and suffering. It is well established that pain and suffering substantially contemporaneous with death or mere incidents to it and also the short period of insensibility which sometimes intervenes between with fatal injuries and death affords no basis for separate estimation or award of damages for pre-death pain and suffering." *Id. at* 658.

In *Ross Island Sand & Gravel*, 626 F.2d 746 (9th Cir. 1980), which also was a drowning, the Court stated the requirements in the Ninth Circuit, which is that plaintiff must show whether the decedent remained conscience for an "appreciable length of time" prior to death *Id. at* 751. In *Ghotra by Ghotra v. Bandila Shipping*, 113 F.3d 105 (9th Cir. 1997), the Ninth Circuit stated "under the facts here, ten seconds of insensible consciousness does not meet the "appreciable period of time" threshold for recovery of pre-death and suffering damages. See *Craft*, 231 U.S. at 705 (30

Motions In Limine
*MacLay v. M/V SAHARA & G Shipping*
Case No.: C12-512 RSM
Page **7** of **18**

Kevin Beauchamp Smith
Attorney At Law
4714 Ballard Avenue, NW, PMB 194
Seattle, WA 98107-4850
206-781-1657
KBEAUS@IX.NETCOM.COM

minute period of consciousness after a railroad car passed over a man's body and lacerated his abdomen was a cause "close to the border line" for recovery of pre-death pain and suffering; See *Cook*, 626 F.2d at 748 (2½ minutes submerged in water was sufficient for recovery because drowning victims experience a period of heightened awareness prior to death). The Ninth Circuit goes on to state "viewing in the light most favorable to Ghostras, Dr. Acosta's testimony fails to raise a general issue of material of fact that the victim remained conscious for an appreciable period of time." Id. at

In our pending matter the expert affidavit of Dr. Cummins in support of his disclosure states "Ms. Hawkins was conscious or semi-conscious(?) when she entered the water and was therefore aware of what was happening to her. Further evidence suggest that, while still conscious, Ms. Hawkins struggled at least for a short period of time after entering the water. This is indicated by findings in the autopsy suggesting that Ms. Hawkins gasped for several breaths while attempting to keep her head above water." He further goes on to state "my opinion is that Ms. Hawkins was conscious or semi-conscious while in the course of drowning. I also believe in a more probably than not basis that Ms. Hawkins experienced the pain, suffering, panic and fear typically associated with a conscious or semi-conscious drowning death."

Even taken in its most favorable light, the testimony of Dr. Cummins fails to satisfy the standards set forth initially by the U.S. Supreme Court and whole heartedly adopted by the Ninth Circuit that plaintiff suffer **conscious** pain and suffering until death for an appreciable period of time, which according to precedent in this Circuit is well more than ten (10) seconds (Ghotra) and likely considerably longer. The "gasps for breath Dr. Cummins suggest indicate the suffering, which at best are only a couple of seconds of either voluntary (unconscious) or involuntary (semi-

Motions In Limine
*MacLay v. M/V SAHARA & G Shipping*
Case No.: C12-512 RSM
Page **8** of **18**

Kevin Beauchamp Smith
Attorney At Law
4714 Ballard Avenue, NW, PMB 194
Seattle, WA 98107-4850
206-781-1657
KBEAUS@IX.NETCOM.COM

conscious) breathing before succumbing, are insufficient to raise a triable issue or for that issue to be submitted to the jury for consideration.

## MOTION #5
## TO EXCLUDE ADMISSION OF THE MEDICAL EXAMINER'S REPORT

The King County Medical Examiner's report regarding Lia Hawkins death contains impermissible hearsay and the mere fact that it is contained within a government document does not make it any less so. It is therefore in admissible at trial.

## MOTION #6
## TO REINSTATE COMPARATIVE NEGLIGENCE DEFENSE

### *Procedural Background*

In the instant matter, defendants seek pretrial rulings on several issues, including the issue of whether comparative negligence should be considered as a defense available to defendant G Shipping Ltd. ("G Shipping"), which was decedent Lia Christine Hawkins' employer at the time of her death. Additionally, defendants seek a pretrial ruling on whether, where a vessel has been determined as a matter of law to *not* be "in navigation," said vessel can owe a warranty of seaworthiness. In recent motion practice, which resulted in this Court's Order dated February 22, 2013 (the "Order", Dkt. #84), the parties vied over the appropriateness of defendants' affirmative defenses. During previous motion practice an important legal distinction may have faded into the background. That distinction is between the applicability of the contributory negligence and comparative negligence defenses in maritime personal injury cases where the Longshore and Harbor Workers' Compensation Act ("LHWCA" or "Act") is implicated. Defendants concede only that in an action properly brought under § 905(a) of the LHWCA, the defense of contributory negligence is unavailable to the defendant employer. However, defendants must point out that: (1) contributory

Motions In Limine
*MacLay v. M/V SAHARA & G Shipping*
Case No.: C12-512 RSM
Page **9** of **18**

**Kevin Beauchamp Smith**
**Attorney At Law**
**4714 Ballard Avenue, NW, PMB 194**
**Seattle, WA 98107-4850**
**206-781-1657**
**KBEAUS@IX.NETCOM.COM**

negligence is not the same as, or interchangeable with, comparative negligence; and (2) they contend that the law dictates that comparative negligence must be taken into account during the trial of this matter.

### *Argument*

### *Comparative Negligence Is Incorporated Into The LHWCA And Must Be Applied In This Matter*

The Longshore and Harbor Workers' Compensation Act ("LHWCA" or "Act") provides the exclusive remedy for an injured employee falling under the Act and preempts all other claims against his employer. *Norfolk Shipbuilding & Drydock Corp. v. Garris*, 532 U.S. 811, 818 (2001) (citing 33 U.S.C. § 905(a), (b)). Thus, an employer is immune from liability outside of the LHWCA unless it "fails to secure compensation" as set forth by that Act. *Wash. Metro. Area Transit Auth. v. Johnson*, 467 U.S. 925, 937, 104 S. Ct. 2827, 81 L. Ed. 2d 768 (1984). If the employer does fail to secure compensation under the LHWCA, then the employee is allowed to either: (1) elect to claim compensation under the LHWCA; or (2) commence an action at law or in admiralty for damages. *Id.* at 932, 104 S. Ct. 2827, 81 L. Ed. 2d 768 (quoting 33 U.S.C. § 905(a)) (internal quotation marks omitted). The purpose of § 905(a) of the Act is "to induce employers to accept and participate in the LHWCA compensation scheme by eliminating the non-participating employer's immunity from tort actions under the LHWCA." *Brown v. Forest Oil Corp.*, 29 F.3d 966, 971-72, 1994 U.S. App. LEXIS 21286 (5th Cir. 1994); *see Weeks v. Alonzo Cothron, Inc.*, 493 F.2d 538 (5th Cir. 1974) (citing *Gould v. Bird & Sons*, 5 Wash. App. 59, 485 P.2d 458, *review denied*, 79 Wash. 2d 1009 (1971)). The effect of § 905(a) is to restore an employee's pre-LHWCA rights against an employer that fails to participate in the statutory scheme enacted by Congress, *i.e.*, the Act. *Id.*; *see Parker v. S. La. Contractors, Inc.*, 537 F.2d 113 (5th Cir. 1976).

Motions In Limine
*MacLay v. M/V SAHARA & G Shipping*
Case No.: C12-512 RSM
Page **10** of **18**

Kevin Beauchamp Smith
Attorney At Law
4714 Ballard Avenue, NW, PMB 194
Seattle, WA 98107-4850
206-781-1657
KBEAUS@IX.NETCOM.COM

In the instant matter, this Court has held that decedent, Lia Christine Hawkins, is a harbor worker entitled to coverage under the LHWCA. This Court has also held that defendant, G Shipping Ltd., which was Ms. Hawkins' employer at the time of her death, failed to secure compensation as set forth by the LHWCA. Plaintiff, the representative of Ms. Hawkins' estate, has elected, under § 905(a) of the Act, to commence and maintain an action at law or in admiralty against defendant, G Shipping Ltd., instead of collecting the benefits owed under the LHWCA. While plaintiff is within her rights to maintain an action against G Shipping under § 905(a), it is crucial to note that the jury must take into account any negligence on the part of Ms. Hawkins in accordance with the doctrine of comparative negligence.

Maritime law recognizes the doctrine of comparative negligence or comparative fault and applies that doctrine in strict liability actions for unseaworthiness, in personal injury actions under the Jones Act, in actions brought under the Death on the High Seas Act, and most importantly for the instant matter, in harbor workers' actions against vessels under the LHWCA. *Lewis v. Timco, Inc.* (*1983, CA5 La*), 716 F.2d 1425, CCH Prod. Liab. Rep. (CCH) ¶ 9831, 1984 (5th Cir. 1983) *AMC 191*, 74 A.L.R. Fed. 293 (1985). In 1972, the United States Congress enacted amendments to the LHWCA, and, among other things, "Congress clearly intended third party suits to be governed by uniform land-based negligence concept[s] with [the] exceptions of [the] admiralty concept of comparative negligence and [the] admiralty rule precluding defense of assumption of risk." *Hite v. Mar. Overseas Corp.* (*1974, ED Tex*), 380 F. Supp. 222 (E.D. Tex. 1974). The 1972 amendments enacted by Congress made clear "that the less harsh doctrine of comparative, rather than contributory, negligence would apply" to cases arising under the LHWCA where an injured worker's own negligence may have contributed to the injury. *Shellman v. U.S. Lines, Inc.*, 528 F.2d 675, 681, 1975 U.S. App. LEXIS 11820, at *22 (9th Cir. 1975) Fed. R. Serv. 2d (Callaghan) *397, 40 Cal.*

Motions In Limine
*MacLay v. M/V SAHARA & G Shipping*
Case No.: C12-512 RSM
Page **11** of **18**

Kevin Beauchamp Smith
Attorney At Law
4714 Ballard Avenue, NW, PMB 194
Seattle, WA 98107-4850
206-781-1657
KBEAUS@IX.NETCOM.COM

*Comp. Cas 1032*, 42 A.L.R. Fed. 749 (1979) (9th Cir. Cal. 1975). At the time of the 1972 amendments, and through today, the doctrine of comparative negligence had long been favored over the doctrine of contributory negligence in admiralty. *See Pope & Talbot, Inc. v. Hawn*, 346 U.S. 406, 408, 98 L. Ed. 143, 74 S. Ct. 202 (1953); *Arthur v. Flota Mercante Gran Centro Americana S.A.*, 487 F.2d 561, 563 (5th Cir. 1973); *Rivera v. Rederi A/B Nordstjernan*, 456 F.2d 970, 973 (1st Cir. 1972); *McInnis v. Hamburg Am. Lines*, 317 F. Supp. 1395, 1397 (N.D. Cal. 1970). Most telling and most persuasive is what the Congressional Committee that enacted the 1972 amendments to the LHWCA had to say about comparative negligence versus contributory negligence with regard to actions under § 905 of the LHWCA:

> Finally, the Committee does not intend that the negligence remedy authorized in the bill shall be applied differently in different ports depending on the law of the State in which the port may be located. The Committee intends that legal questions which may arise in actions brought under these provisions of the law shall be determined as a matter of Federal law. In that connection, the Committee intends that the admiralty concept of comparative negligence, rather than the common law rule as to contributory negligence, shall apply in cases where the injured employee's own negligence may have contributed to causing the injury. Also, the Committee intends that the admiralty rule which precludes the defense of "assumption of risk" in an action by an injured employee shall also be applicable.

3 U.S. Code Cong. & Admin. News, *pp.* 4704, 4705 (1972). Thus, there can be no doubt that the doctrine of comparative negligence has long been held to be harmonious with maritime law, that the doctrine of contributory negligence was disfavored by Congress, and that it was Congress' specific intent that the doctrine of comparative negligence be applicable to actions arising under § 905 of the Longshore and Harbor Workers' Compensation Act.

Motions In Limine
*MacLay v. M/V SAHARA & G Shipping*
Case No.: C12-512 RSM
Page **12** of **18**

**Kevin Beauchamp Smith**
**Attorney At Law**
4714 Ballard Avenue, NW, PMB 194
Seattle, WA 98107-4850
206-781-1657
KBEAUS@IX.NETCOM.COM

# MOTION #7
## TO STRIKE G-SHIPPING'S REPORT TO
## <u>UNITED STATES COAST GUARD</u>

At the time of Ms. Hawkins disappearance, the United States Coast Guard exercised its investigatory jurisdiction, along with the authorities from the City of Seattle and King County. As part of the Coast Guard's investigatory process, the U.S. Coast Guard required the vessel to prepare and file a CG 2692 form, which is a report of marine incident or casualty.

The purpose behind form CG-2692 is to allow full, fair and frank discussions between the vessel owner, vessel operator and the United States Coast Guard. As a result, 46 C.F.R. § 5.20-120 and § 5.20-125, preclude the use of those forms as evidence or admissible admission outside the limited scope permitted by those rules, which is for impeachment purposes only within a Coast Guard hearing.

So, although Form CG-2692 is available via the Freedom of Information Act, it may not be used in its own right in any civil litigation as a public document or otherwise.

It is respectfully submitted that the USCG form CG-2692 was prepared at the direction of the United States Coast Guard pursuant to 46 C.F.R. § 4.05-10, and as such is part of the casualty investigation which also is part of the Coast Guard's province to issue a final report, which is further protected under 46 USC § 6308.

It would frustrate the purposes of the Coast Guard's jurisdiction and investigation requirements to permit G-Shipping's CG-2692 into the evidentiary record in this matter.

Motions In Limine
*MacLay v. M/V SAHARA & G Shipping*
Case No.: C12-512 RSM
Page **13** of **18**

**Kevin Beauchamp Smith
Attorney At Law**
4714 Ballard Avenue, NW, PMB 194
Seattle, WA 98107-4850
206-781-1657
KBEAUS@IX.NETCOM.COM

# MOTION #8
## TO STRIKE UNSEAWORTHINESS CLAIMS

### *A Vessel That Is Not "In Navigation"*
### *Cannot Owe Anyone A Warranty Of Seaworthiness*

In the instant matter, this Court has held that decedent, Lia Christine Hawkins, is a harbor worker entitled to coverage under the LHWCA. Dkt #84, pages 6.-8. This Court has also held that Ms. Hawkins was not a Jones Act seaman because, specifically, the M/V SAHARA was not a vessel "in navigation" as delineated by Ninth Circuit case law. Dkt #84, pages 4-6. The United States Supreme Court has held that where a vessel is not in navigation, there is no warranty of that vessel's seaworthiness. *Roper v. United States*, 368 U.S. 20, 23-24, 82 S. Ct. 5, 7 L. Ed. 2d 1, 1961 U.S. LEXIS 1950 (1961). In *Roper*, the plaintiff, a foreman of a longshoremen crew, sustained injuries on board a deactivated or "mothballed" ship while in the process of unloading grain that had temporarily been stored aboard the ship. *Id.* The plaintiff sued the ship's owner for breach of the warranty of seaworthiness. *Id.* Ultimately, the United States Supreme Court dismissed plaintiff's claims for unseaworthiness because the ship was not in navigation, and thus, there was no warranty of seaworthiness. *Id.*

Based upon recent conversations with plaintiff's counsel in this matter, it seems that plaintiff's position is that while Ms. Hawkins was a harbor worker covered by the LHWCA and not a seaman covered by the Jones Act, she is still entitled to assert the strict liability cause of action of unseaworthiness. Plaintiff's assertion appears to be based on an erroneous belief that, simply because the effect of § 905(a) of the Act is to restore an employee's pre-LHWCA rights against an employer that fails to secure LHWCA coverage, plaintiff can now choose from the panoply of remedies available at law and in admiralty without regard for whether she qualifies for such remedies. *See Weeks*, 493 F.2d 538; *see Parker*, 537 F.2d 113. Even if we look to the state of the

Motions In Limine
*MacLay v. M/V SAHARA & G Shipping*
Case No.: C12-512 RSM
Page **14** of **18**

Kevin Beauchamp Smith
Attorney At Law
4714 Ballard Avenue, NW, PMB 194
Seattle, WA 98107-4850
206-781-1657
KBEAUS@IX.NETCOM.COM

law prior to the 1972 amendments to the LHWCA, to a time when longshoremen were often afforded the ability to sue for unseaworthiness under certain circumstances pursuant to the *Sieracki* line of cases, Ms. Hawkins would not qualify as the type of longshore or harbor worker capable of sustaining a suit for unseaworthiness.

> The Supreme Court held in the landmark case of Seas Shipping Co. v. Sieracki, and later reiterated in Pope & Talbot, Inc. v. Hawn, that the duty imposed upon a shipowner to supply a seaworthy vessel extends not only to immediate crew members, but to all who perform ships' services traditionally rendered by seamen. Whether the plaintiff comes within 'the range of (this) humanitarian policy' depends upon the nature of his work and its relationship to the ship and to the historic doctrine of seaworthiness.

*Calderone v. Naviera Vacuba, S/A*, 204 F. Supp. 783, 785, 1962 U.S. Dist. LEXIS 4588 (S.D.N.Y. 1962). Though *Sieracki* and its progeny expanded the availability of unseaworthiness claims to non-seamen, those cases did not do so without some restrictions. In fact, even under those cases, shore based workers were not allowed to maintain causes of action for unseaworthiness where: (1) the vessels were not in maritime service; (2) the vessels were undergoing complete overhauls or extensive repairs; and (3) the vessels were not under the control of the owners or operators. *Id.* at *Seas Shipping v. Sieracki,* U.S.786. Thus, even if we turn back the clock to the period of time before Congress expressly overturned the *Sieracki* line of cases with its 1972 amendments to the LHWCA, Ms. Hawkins still would not have had a valid cause of action for unseaworthiness. Certainly, under present case law as set forth by the United States Supreme Court and the Ninth Circuit, Ms. Hawkins has no valid cause of action for unseaworthiness. No matter what time period's case law we apply, Ms. Hawkins cannot claim for unseaworthiness.

Motions In Limine
*MacLay v. M/V SAHARA & G Shipping*
Case No.: C12-512 RSM
Page **15** of **18**

**Kevin Beauchamp Smith**
**Attorney At Law**
**4714 Ballard Avenue, NW, PMB 194**
Seattle, WA 98107-4850
206-781-1657
KBEAUS@IX.NETCOM.COM

**MOTION #9**
**TO STRIKE PUNITIVE DAMAGES CLAIM**

Plaintiff has produced no testimony during the discovery period which satisfies a threshold showing that the defendants' acted maliciously or grossly negligent toward Lia Hawkins such that their claim for punitive damages can be submitted to the jury. Allowing plaintiff to suggest to the jury in their opening, or otherwise, that plaintiff can seek punitive damages without a threshold showing is patently improper, and severely prejudicial to the defendants. It is therefore respectfully requested that this Court prohibit any discussion of punitive damages in front of the jury until a threshold is established via admissible testimony.

**MOTION #10**
**TO STRIKE IN REM CLAIM**

This Court has previously found in its February 22, 2013 Order (Dkt.#84, pages 4-6), that MV SAHARA is not a vessel in navigation. A vessel withdrawn from navigation, is also known as a "dead ship," and that designation has very significant meaning in the world of maritime legal jurisprudence. Because a dead ship is not a vessel, just like a boat built before its commissioning is likewise not a vessel, in either state it falls outside maritime jurisdiction. The SAHARA, having been found to be a "dead ship" deprives this Court of maritime subject matter jurisdiction, including *in rem* jurisdiction over the vessel MV SAHARA. See *Amoco Oil v. MV Montclair*, 776 F.2d 473, 475 (11th Cir. 1985); see also *Robert E. Blake v. Excel Environmental*, 104 F.3d 1158 (9th Cir. 1997).

Since this Court, as a matter of law and precedent, has found the MV SAHARA not to be a vessel in navigation, it should now, but must no later than the close of plaintiff's case, dismiss all of plaintiff's *in rem* claims, and release from arrest the MV SAHARA by virtue of this Court's lack of subject matter jurisdiction over said object.

Motions In Limine
*MacLay v. M/V SAHARA & G Shipping*
Case No.: C12-512 RSM
Page **16** of **18**

Kevin Beauchamp Smith
Attorney At Law
4714 Ballard Avenue, NW, PMB 194
Seattle, WA 98107-4850
206-781-1657
KBEAUS@IX.NETCOM.COM

For the reasons set forth herein, defendants request this Court grant all of its Motions In Limine and direct the conducting of the trial in accordance therewith.

Pursuant to Local Civil Rule 7 (d) (4) counsels for defendants certify that on Tuesday, March 12, 2013, they conferred in good faith with opposing counsels in an effort to resolve which matters are really in dispute, prior to filing the motions in limine herein.

RESPECTFULLY SUBMITTED by Defendants,

**DATED** this 14th day of March, 2013.

**KEVIN BEAUCHAMP SMITH ATTORNEY AT LAW**

*s/Kevin Beauchamp Smith*
**KEVIN BEAUCHAMP SMITH, WSBA #21156**
Attorney for the Defendant G Shipping, Ltd.
4714 Ballard Avenue, NW, PMB 194
Seattle, Washington 98107-4850
Telephone: (206) 781-1657
Facsimile: (888) 435-0145
Email: kbeaus@ix.netcom.com


**BENNETT, GIULIANO, McDONNELL & PERRONE, LLP**

s/*Joseph J. Perrone*
**JOSEPH J. PERRONE, NYBA #2285393**
Attorneys for Defendant G Shipping, Ltd.
494 Eighth Avenue, 7th Floor
New York, New York 10001
Telephone: (646) 328-0120
Facsimile: (646) 328-0121
Email: jperrone@bgmplaw.com

Motions In Limine
*MacLay v. M/V SAHARA & G Shipping*
Case No.: C12-512 RSM
Page **17** of **18**

Kevin Beauchamp Smith
Attorney At Law
4714 Ballard Avenue, NW, PMB 194
Seattle, WA 98107-4850
206-781-1657
KBEAUS@IX.NETCOM.COM

# CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury under the laws of the State of Washington that on Friday, the 14th day of March, 2013, I electronically filed the foregoing MOTIONS IN LIMINE with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to the Honorable Richard S. Martinez and the parties who have appeared in this action and whose addresses are noted below.

| | |
|---|---|
| J.D. Stahl<br>MUNDT MACGREGOR LLP<br>271 Wyatt Way, NE, Ste. 106<br>Bainbridge Isle, WA 98110<br>Telephone: (206) 624-5950<br>Facsimile: (206) 5469<br>Email: jdstahl@mundtmac.com | Mark A. Wilner<br>GORDON TILDEN THOMAS &<br>CORDELL LLP<br>1001 4th Avenue, Ste. 4000<br>Seattle, WA 98154<br>Telephone: (206) 467-6477<br>Facsimile: (206) 467-6292<br>Email: mwilner@gordontilden.com |

Susannah C. Carr
GORDON TILDEN THOMAS &
CORDELL LLP
1001 4th Avenue, Ste. 4000
Seattle, WA 98154
Telephone: (206) 467-6477
Facsimile: (206) 467-6292
Email: scarr@gordontilden.com

Robert A. Green
LAW OFFICES OF ROBERT A. GREEN, INC. P.S.
1900 West Nickerson Street
Fishermen's Center, Ste. 203
Seattle, WA 98119
Telephone: (206) 285-9481
Facsimile: (206) 284-4525
Email: robert@rgreenlaw.com

    *s/ Kevin Beauchamp Smith*
    KEVIN BEAUCHAMP SMITH, WSBA # 21156

Z:\Casework\E Cases\E255 Hawkins v G-Shipping\Legal\Motion In Limine -031413.doc

Motions In Limine
*MacLay v. M/V SAHARA & G Shipping*
Case No.: C12-512 RSM
Page **18** of **18**

**Kevin Beauchamp Smith
Attorney At Law**
4714 Ballard Avenue, NW, PMB 194
Seattle, WA 98107-4850
206-781-1657
KBEAUS@IX.NETCOM.COM