Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

JULIE MacLAY, as Personal Representative of
the Estate of Lia Christine Hawkins, deceased,

                Plaintiff,

LUNDE MARINE ELECTRONICS, INC.,

                Plaintiff in Intervention,

      v.

M/V SAHARA (ex OCEANOGRAPHER),
IMO No. 6600826, her engines, tackle, rigging,
equipment and other appurtenances, in rem; and
G SHIPPING LTD., a foreign corporation
organized and existing under the Laws of Malta,

                Defendants.

AT LAW AND IN ADMIRALTY

NO.  C12-512 RSM

PLAINTIFF'S MOTIONS IN LIMINE

NOTE ON MOTIONS CALENDAR:
Friday, March 29, 2013

**ORAL ARGUMENT REQUESTED**

PLAINTIFF'S MOTIONS IN LIMINE
No. C12-512 RSM

**GORDON TILDEN THOMAS & CORDELL** LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................1

II.  PLAINTIFF'S MOTIONS IN LIMINE.......................................................1

     1.   Motion to Admit Certified Copy of Death Certificate.................1

     2.   Motion to Admit G Shipping's Report to U.S. Coast Guard.......1

     3.   Motion to Exclude OSHA File and Any Reference Thereto .......3

     4.   Motion to Exclude Seattle Police Department File
          and References Thereto................................................................12

     5.   Motion to Exclude Evidence or Argument on Contributory and
          Comparative Fault, Assumption of Risk, and Co-Worker
          Negligence Defenses....................................................................12

     6.   Motion to Exclude Toxicology Report and Any Evidence of
          Impairment ...................................................................................13

     7.   Motion to Exclude Testimony of Defense Expert Capt. R.
          Russell Johnson.............................................................................13

     8.   Motion to Exclude Alleged DUI or Criminal
          Acts of Ms. Hawkins.....................................................................16

     9.   Motion to Exclude Defense Expressions of Sympathy
          that Post-Date Ms. Hawkins' Death.............................................17

     10.  Motion to Exclude Evidence of or References to Payment
          of Funeral Expenses .....................................................................17

     11.  Motion to Exclude Witnesses and Documents Not
          Previously Disclosed.....................................................................17

     12.  Motion to Exclude References to Settlement Negotiations .........18

     13.  Motion to Exclude References to the Parties'
          Motions in Limine..........................................................................18

III. CONCLUSION..................................................................................18

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

## I.      INTRODUCTION

Pursuant to LCR 7(d)(4) and the recently-entered stipulated order regarding motions in limine [Dkt. 86], Plaintiff submits the following motions in limine for the Court's consideration in advance of the parties' April 8, 2013 trial.

## II.      PLAINTIFF'S MOTIONS IN LIMINE

**1.      Motion to Admit Certified Copy of Death Certificate**

This motion is agreed to by the parties.  *See* Wilner Decl. ¶ 3 & Ex. A.

**2.      Motion to Admit G Shipping's Report to U.S. Coast Guard**

*Introduction*.   The Court should admit Defendant G Shipping Ltd.'s "Report of Marine, Accident, Injury or Death" to the U.S. Coast Guard regarding Ms. Hawkins' death.  The report is not hearsay.  It is a statement of a party opponent under Rule 801(d)(1).  It also is clearly relevant and not unfairly prejudicial to G Shipping.

*Factual Background*.   G Shipping's report represents a contemporaneous and official explanation from Defendant of what happened to Lia Hawkins.  G Shipping reported to the Coast Guard the circumstances of her death on October 23, 2010, the day after her body was discovered.  Wilner Decl., Ex. B (copy of report).  G Shipping reported that Lia "fell from [the] deck" while "offloading waste material," she was "dressed in coveralls," and her body "was located under the pier adjacent to where the SAHARA [was] moored, and in the location where vessel waste material was being transferred from the vessel to a shoreside receptacle."  *Id.*

Jeff Perry—G Shipping's admitted agent, project manager, and a witness aboard the SAHARA when Ms. Hawkins died—supplied the facts and information on G Shipping's behalf, and specifically made G Shipping's owner (Emanuele Garosci) aware that the report was being

sent.[1]  *See* Wilner Decl., Ex. C at 132:18-22 & Ex. D.  Mr. Perry recalls summarizing the essence

of the report in an email to Mr. Garosci, indicating that the report is "the required form that will

go to the US Coast Guard."  *Id.*, Ex. C at 134:11-135:21 & Ex. D.  Mr. Perry also discussed the

matter with Garosci on the phone.  *Id.*, Ex. C at 134:20-135:7.  Mr. Perry testified that he helped

to prepare the report "on G Shipping's behalf because G Shipping is the vessel owner and was

Lia's employer."  *Id.* at 125:3-6.  In his deposition, Mr. Perry confirmed that the report contains

"the most plausible detail accounts that [he] had," that he was trying to be accurate as possible

when completing it, and that he wanted to submit it to the Coast Guard as soon as possible from

the time of Lia's death.  *Id.* at 136:5-138:17.  Mr. Perry—again, G Shipping's admitted agent—

testified that the specific facts that included in G Shipping's report to the Coast Guard were made

because they represented "the most likely explanation of what happened" and "what Lia was

doing at the time."  *Id.* at 143:24-145:18.

    ***Not Hearsay***.  G Shipping's report is a party admission and, thus, exempted from

hearsay.  A statement is not hearsay if it is "offered against an opposing party and . . . was made

by the party in a . . . representative capacity," "is one the party manifested that it adopted or

believed to be true," "was made by a person whom the party authorized to make a statement on

the subject," **or** "was made by the party's agent . . . on a matter within the scope of that

relationship and while it existed."  Fed. R. Civ. P. 801(d)(2)(A)-(D).  Plaintiff need only invoke

one of the rule's subsections; however, **all four** indisputably apply here.

    ***Relevancy and Lack of Unfair Prejudice***.  The report also is clearly relevant and not

unfairly prejudicial to G Shipping.  "Relevant evidence may be excluded under Rule 403 only if

---

[1] G Shipping admitted that Mr. Perry is an agent of G Shipping in its responses to Plaintiff's requests for admission.  *See* Dkt. 61-2 [11/29/12 Wilner Decl.] at Resp. to RFA 6.

PLAINTIFF'S MOTIONS IN LIMINE - 2
No. C12-512 RSM

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45

its probative value is substantially outweighed by one or more of the articulated dangers or considerations." *United States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000). "Relevant evidence is inherently prejudicial; but it is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter under Rule 403." *Id.* Here, there is nothing about G Shipping's own report that suggests its high probative value is "substantially" outweighed by any "unfair" prejudice. The report is neither distracting nor would its admissibility create an "undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Id.* (quoting Advisory Committee Notes). The report is factual in nature and comes from the defendant. It was prepared as timely and accurately as possible with "the most plausible detail accounts" in an effort to provide the Coast Guard with "the most likely explanation of what happened" on behalf of G Shipping. It should be admitted.

### 3.    Motion to Exclude OSHA File and Any Reference Thereto

*Summary of Argument.* The Court should exclude any evidence of or references to the OSHA "inspection" and results thereof. No party has listed any OSHA document as a trial exhibit or any OSHA personnel as a witness (Wilner Decl. ¶ 2 & Ex. A)—for good reason. An unidentified OSHA investigator performed an untimely, inadequate, self-described "partial" investigation—three weeks after Lia Hawkins died and the accident scene had been materially altered. There was **no** inspection of the SAHARA. The inspector never boarded the ship. G Shipping kept him off of it. The inspector never could see—and thus could not evaluate—what the working conditions of the ship were actually like. The unidentified inspector also failed to interview key witnesses, such as Theron Hawkins, and failed to review key documents, such as G Shipping's own report to the Coast Guard. He failed to type his report consistent with his own handwritten notes on a fundamental and undisputed fact of this case—**that the safety chain was**

PLAINTIFF'S MOTIONS IN LIMINE - 3
No. C12-512 RSM

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

**down, not up, at the time of Ms. Hawkins' death**.  Key portions of the report are also left blank, despite obvious relevance of the numerous safety issues.

This type of report is substantively inadmissible.  It is hearsay and unquestionably fails the trustworthiness requirement of the public records exception for reasons expressed in analogous opinions from the Ninth Circuit and other jurisdictions.  As a result, the documentary evidence should be excluded (as the parties agree).  Nor should there be any "back door" references to such inadmissible, untrustworthy evidence through witness testimony.

*Factual Background*.  On November 10, 2010—three weeks after Lia's death—OSHA sent out an unidentified inspector to inspect the SAHARA and investigate what happened.  This was the first time OSHA attempted to communicate with anyone affiliated with G Shipping or the SAHARA.  *Id.*, Ex. C at 213:1-12.  Jeff Perry said he was "interrupted" by the investigator.  *Id.*, Ex. F.  No prior arrangements had been made; the unidentified inspector showed up unannounced.  *Id.*, Ex. C at 212:19-213:12.  OSHA later acknowledged that the 20-day delay in performing the investigation was an "UNUSUAL CIRCUMSTANCE."  *Id.*, Ex. E at HAWKINS 542.  In a later unsigned "Inspection Report," OSHA called it a "Partial Inspection."  *Id.* at HAWKINS 539.  This description alone is an overstatement for the reasons discussed below.

The unidentified OSHA inspector never performed an inspection.  When first asked about an "inspection" during his deposition, Mr. Perry quickly corrected the question: "**There was no inspection**."  *Id.*, Ex. C at 212:10 (emphasis added).  The inspector never once set foot on the SAHARA.  The so-called "inspection" was comprised of Mr. Perry and the inspector sitting in a camping trailer, where the inspector asked some questions to Mr. Perry and then left.  *Id.* at 215:21-216:1.  Mr. Perry describes the questioning as "brief."  *Id.* at 217:15.  Perry later told

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

Garosci he "was glad he was able to keep him [the investigator] off of the ship." *Id.*, Ex. G at GSL_EMAIL 143. Jurisdictional limits apparently precluded OSHA from stepping onto the ship unless it was invited to board the ship by G Shipping. *Id.*, Ex. C at 220:11-13. The inspector asked to board the SAHARA, but Perry declined to invite him. *Id.* at 220:15-16, 225:3-13. Nor did anyone else on G Shipping's behalf ever allow OSHA to board the SAHARA. *Id.* at 225:14-16. The end result: **there was never any inspection**. As Perry put it: "The OSHA inspector was not on the ship so he could not see . . . anything that was on the ship."[2] *Id.* at 223:2-4.

The unidentified OSHA's inspector's written report (undated and unsigned) also is replete with material inaccuracies, even including the investigator's failure to follow his own notetaking from briefly speaking with Mr. Perry:

- The report states that "the safety chain**s** [plural] were in place" and "the screw lock**s** [plural] were in place." *Id.*, Ex. E at HAWKINS 548 (emphasis added). It does not say the chains were down. *Id.* Yet the undisputed evidence from Perry and Theron Hawkins is that only **one** safety chain even worked and it was **not** in place when Ms. Hawkins died. Dkt. 61-1 at 115:11-15, 154:7-155:3 (Perry Dep.); Dkt. 61-1, Ex. C at 46:15-47:5, 48:3-16 (T. Hawkins Dep.). Indeed, as reflected in the investigator's handwritten notes, Perry actually told the investigator that the chains were **down** when he first saw them after Lia had disappeared. *Id.*, Ex. E at HAWKINS 553. Yet this key fact did not make it into the typewritten report.

- The report states "there was no evidence that indicated there was a safety hazard present" when Lia died. *Id.* at HAWKINS 548. But the inspector himself never went on the ship to inspect what the safety conditions were actually like at or even near the time of Lia's death. In all events, the two witnesses agree that the safety chain was down, not up. Even **G Shipping's** retained expert agrees that a safety hazard exists if the safety chains were down.[3]

---

[2] In its FOIA response to Plaintiff's counsel in this case, OSHA likewise acknowledged that it has **never** actually inspected the SAHARA. Wilner Decl., Ex. E at HAWKINS 529.

[3] In formulating his "opinions" (*see* Mot. in Limine No. 7 below), G Shipping's expert Capt. Johnson relied only on the typewritten report of the OSHA investigator. Capt. Johnson only learned of the handwritten investigator notes during his deposition. Once he saw the notes—and the KCME photograph showing the gap in the fourth-level deck guardrailing (taken on the day Lia's body was discovered)—he acknowledged there was a "fall hazard." Wilner Decl., Ex. H at 54:9-58:24. "[I]f there was no chain in place on that area, I would assume that that was problematic." *Id.* at 58:19-21.

PLAINTIFF'S MOTIONS IN LIMINE - 5
No. C12-512 RSM

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

- An OSHA regulation requires that unprotected decks higher than five feet above a hard surface must be protected by guarding of some kind. 29 C.F.R. § 1915.73(d). Yet the inspector's report has no mention of, reference to, or discussion of, this safety regulation.

- The report states that Lia Hawkins was heading "to do financial record keeping work . . . when she was last seen." *Id.* at HAWKINS 547. Yet the one and only witness that the investigator interviewed—Jeff Perry—testified otherwise in this case and had previously advised the Coast Guard otherwise. *See supra* Mot. in Limine No. 2. The investigator never saw the Coast Guard form—he never asked for it. Wilner Decl., Ex. C at 214:20-215:2. The topic of the Coast Guard form never came up; the investigator was unaware of it. *Id.* at 215:3-6. The investigator also never interviewed Theron Hawkins. If he did, he would have learned from the only other witness aboard the SAHARA at the time of Lia's death, that Mr. Hawkins saw Lia within minutes of her death (after Perry) and she was holding scrap metal and was wearing her work coveralls and gloves, and most importantly, she was heading—**not** to her office—but to the fourth-level deck where such debris was commonly disposed of. *See* Dkt. 69 at 10-12 (quoting, referring to, and attaching T. Hawkins deposition testimony).

- The report states that the "only" difference in the accident scene when it took place three weeks before the investigation "was the removal of a scrap metal bin on the dock." Wilner Decl., Ex. E at HAWKINS 547. This alteration of the evidence alone is significant. But it is not the only thing that changed. The safety chains had been altered as well. *Id.*, Ex. C at 215:7-16 (Perry Dep.).

- The report states it is "unclear at what time the accident occurred." *Id.* at HAWKINS 547. Yet both witnesses Perry and Hawkins agree it occurred just after 11:00am, and this time is consistent with the time as reported in key documents, such as the death certificate and G Shipping's report to the Coast Guard, which the investigator failed to consult. Wilner Decl., Exs. B and I.

- The report states it is "unclear" "what the nature of the accident was." *Id.*, Ex. E at HAWKINS 547. Yet the best and only evidence of what occurred here points to the fact that Ms. Hawkins fell off the fourth-level deck while attempting to dispose of scrap metal. Indeed, this explanation was the **only** one that Mr. Perry told the investigator. *Id.* at HAWKINS 553.

- The report states that Jeff Perry and Theron Hawkins "were below decks" at the time of Lia's death, HAWKINS 548, but they were on the same deck—the fourth-level of the ship. Dkt. 69 at 11-12 (describing, quoting, and attaching testimony).

- The report states that "[t]he police did not take any photos of the site since the time the accident occurred." Wilner Decl., Ex. E at HAWKINS 546. However, the investigator was aware of the King County Medical Examiner's involvement

(*id.* at HAWKINS 553), and KCME investigator Sosik had taken photos "of the site" when Ms. Hawkins' body was discovered (Dkt. 62).  The OSHA investigator apparently never asked to see them.

Other documents in the OSHA file likewise reveal material inaccuracies and oversights:

- In an Investigation Summary document, the unidentified OSHA investigator states that "[w]orking surface or facility layout condition" was an "environmental factor" related to the incident.  *Id.*, Ex. E at HAWKINS 550.  However, the investigator never set foot on the ship, much less the fourth-level deck to ascertain anything about the "working surface."

- Similar things may be said of the notating "[m]isjudgment of hazardous situation."  There is simply no evidentiary basis for this view from the unidentified OSHA investigator.  *Id.*

- In a "SAFETY NARRATIVE" form, the investigator failed to check the box for "Denial of entry" and complete the required separate "denial memo," *id.* at HAWKINS 542, although the investigator was undisputedly "denied entry."

- In a "Safety Steps Survey" form, the investigator indicates he does not know if G Shipping made any changes to its safety and health program within the last three years.  *Id.* at HAWKINS 540.  But that is only because the inspector never asked Mr. Perry about it.  *Id.*, Ex. C at 216:5-12 (Perry Dep.).  If he had asked Mr. Perry (and if Mr. Perry told the truth), the inspector would have learned that G Shipping had no such program.  *Id.* at 216:13-217:1.

Finally, many pages of OSHA forms have clearly relevant areas to complete, such as those labeled "EMPLOYER'S OVERALL SAFETY AND HEALTH PROGRAM" and "**Fall Protection**" *See, e.g., id.*, Ex. E at HAWKINS 544, 551.  But the unidentified investigator simply left these parts blank.  *Id.*  Mr. Perry testified that the inspector did not ask him about these topics.  *Id.*, Ex. C at 217:2-12.

The inadequacies of the OSHA "inspection" continued after November 10, 2010.  A notation in the OSHA file shows that OSHA Area Director David Baker, three months later, felt compelled to speak to the unidentified investigator "about the importance of obtain[ing] quickly and accurately nok [next of kin] contact information" when performing an investigation.  *Id.*, Ex.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45

E at HAWKINS 533.  This particular oversight had significant repercussions.  OSHA knew the next of kin was Theron Hawkins.  An undated "Note to file" from Area Director Baker acknowledges the unexplained "delay in contacting the employer [G Shipping]," had the further negative consequence of preventing OSHA from interviewing Mr. Hawkins.  *Id.* at HAWKINS 538.  OSHA knew he "worked at the same facility," yet sent a letter "to the family" with the "hope[] that they would eventually be in contact with them."  *Id.*  To make matters worse, OSHA did not mail the letter to Mr. Hawkins or "to the family."  The letter was mailed to G Shipping. *Id.*  OSHA never tried to call Mr. Hawkins and apparently gave up when he did not respond— despite the fact that Mr. Hawkins was one of only two persons on the ship when Lia died, has critical information about what Lia was doing when she died, knows the working conditions aboard the ship at the time, and lacks the bias inherent with G Shipping's agent Jeff Perry.

     *Analysis*.  The Court should exclude the OSHA file and any references thereto.  Neither party has listed the OSHA file as an exhibit or the unidentified inspector as a witness.  However, G Shipping contends it may discuss the OSHA evidence regardless.  The evidence rules preclude it however.  The OSHA file contains hearsay, and in many cases, multiple levels of hearsay. There is only one potentially applicable hearsay exception:  the public records exception under Rule 803(8).[4]  However, it does not apply, because "the source of information" and "other circumstances indicate a lack of trustworthiness."  Fed. R. Evid. 803(8)(B).  This Court "has the discretion, and indeed the obligation, to exclude an entire report . . . that [it] determines to be untrustworthy."  *Sullivan v. Dollar Tree Stores, Inc.*, 623 F.3d 770, 778 (9th Cir. 2010); *see also*

---

    [4] The restyled Federal Rules of Evidence went into effect on December 1, 2011.  As a result, several Rules, including Rule 803, were amended in terms of style, but not substance.  Because the amendments were not substantive, a court's analysis under current Rule 803(8)(A)(iii) should not differ from its analysis under prior Rule 803(8)(C), discussed in many of the cases cited below.

PLAINTIFF'S MOTIONS IN LIMINE - 8
No. C12-512 RSM

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45

*Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 170 (1988).  Relevant, nonexclusive factors of "untrustworthiness" include:  (1) the timeliness of the investigation; (2) the investigator's skill or experience; (3) whether a hearing was held; and (4) possible bias when reports are prepared with a view to possible litigation.  *Sullivan*, 623 F.3d at 778 (citing *Beech*, 488 U.S. at 167 n.11).

In *Sullivan*, the plaintiff argued that the district court erred when it held that a DOL report which concluded that an employer was successor-in-interest for purposes of FMLA was inadmissible hearsay not exempted by the public records exemption.  The Ninth Circuit held that the district court acted within its discretion to exclude the evidence based on lack of trustworthiness because: (1) the DOL report was incomplete because its exhibits were not attached; (2) the author of the report was unidentified, making it impossible to assess the author's skill or experience; (3) no hearing was held; (4) the document did not appear to be a final report, as distinct from an internal draft; and (5) the DOL did not issue the report or send it to either party at any time prior to litigation; rather it became available only because plaintiff filed a request pursuant to FOIA.  *Id.*

In *Jenkins v. Whittaker Corp.*, 785 F.2d 720 (9th Cir. 1986), the Ninth Circuit held the circumstances surrounding creation of accident reports supported trial court's decision to exclude them as untrustworthy where: (1) investigator had no competence or experience in area of investigation; (2) investigator did not begin investigation until over one week after accident; and (3) investigator never talked to any of the personnel involved.  *Id.* at 726-27.

In *Hines v. Brandon Steel  Decks, Inc.*, 754 F. Supp. 199 (M.D. Ga. 1991), the court found the trustworthiness of an OSHA report was suspect where:  (1) court was not convinced investigator had necessary expertise; (2) investigator-author, who lacked firsthand knowledge of

PLAINTIFF'S MOTIONS IN LIMINE - 9
No. C12-512 RSM

the events in question, gathered information without holding any type of hearing or affording

interested parties an opportunity to cross-examine witnesses; and (3) plaintiff was not assured of

an opportunity to cross examine the investigator who drafted the report since federal generally

prohibits OSHA investigators from testifying in civil litigation. *Hines*, 754 F. Supp. at 200-01.

The factors regarding untrustworthiness in *Sullivan*, *Jenkins*, and *Hines* are present here:

- **Incompleteness**. OSHA itself labeled the inspection as a "partial inspection." This alone should raise the question of what was not inspected. But we know what was not inspected: the ship itself. The inspector did not ever step foot on the SAHARA. Key parts of the report are simply missing. References to the key safety OSHA regulations are missing. The inspector was denied entry, but the "denial memo" is missing. The file contains many redactions. Key witnesses were never interviewed. Key documents were never reviewed. Even the key fact about which the unidentified investigator was told—the safety chain was down— is missing in the report.

- **Lack of Finality/Formal Issuance**. Like in *Sullivan*, the OSHA report appears to be an internal document only, OSHA did not issue the report to either party prior to litigation, and the report only became available because Plaintiff submitted a FOIA request. Wilner Decl., Ex. E at HAWKINS 529.

- **Untimeliness**. The Ninth Circuit has held that a delay of one week is a contributing factor in a finding of untrustworthiness. *Jenkins*, 785 F.2d at 726. Here, there is an undisputed, unexplained three week delay between the time of Lia's death and the OSHA investigation. OSHA itself acknowledges this is an "unusual circumstance." The timing is important because the investigator purports to discuss working conditions on the SAHARA at the time of Lia's death, but the discussion is based on an interview with one witness three weeks later when at least two material changes had already occurred: the recycling container had already been removed and the safety chains had already been re-installed. It also remains unclear what else had been altered or cleaned up by this time—three weeks later—as the inspector never went on the SAHARA.

- **Lack of Author/Investigator's Skill or Experience**. Questions of trustworthiness arise where the author or investigator is unidentified and unknown (*Sullivan*) and/or unavailable for cross-examination (*Hines*). Like the investigator in *Sullivan*, the OSHA investigator here is unknown, all references to his identity having been redacted by OSHA, rendering it impossible for Plaintiff (and the Court) to evaluate the investigator's competence. Such facts alone weigh against

1
2  admission of the evidence.[5]  But the OSHA file itself reveals significant concern
3  about the investigator's competence, including notations from the inspector's
4  superior about flaws in the investigator's work product.

5  • **No Hearing**.  As in *Sullivan* and *Hines*, no hearing was held prior to the generation
6    of the report, which means that report was based upon information not subjected to
7    cross-examination.  OSHA knew Theron Hawkins worked on the ship and was a
8    key witness, but it never spoke to him.  Nor did it really try to.  It authored a letter
9    "to the family" but mailed it to G Shipping, knowing Mr. Hawkins was not working
10   there anymore.  In all events, the attempt to contact Mr. Hawkins occurred only
11   after it had already completed its "investigation" and "okayed" the closure of the
12   file.  In short, the only witness it spoke to was G Shipping's agent Jeff Perry, who
13   "was glad he was able to keep [the investigator] off of the ship."

15  *Conclusion*.  For the reasons discussed above, the OSHA file, including the report,

17  should be deemed inadmissible and all references thereto should be excluded at trial.  As noted at

19  the outset of this motion, the documentary evidence (the OSHA file) is not listed as an exhibit by

21  any party.  Nor is the unidentified OSHA inspector obviously listed as a witness.  The only way

23  G Shipping could potentially seek introduce this evidence would be through Jeff Perry or its

25  expert (assuming he is permitted to testify, *see* Mot. in Limine No. 7 below).  However, such

27  witnesses cannot serve as mouthpieces to introduce information otherwise substantively

29  inadmissible.  This principle applies to experts under Fed. R. Evid. 703.[6]  "The presumptive

31  evidence that otherwise is inadmissible will be kept out unless the court determines that any

---

[5] So does Plaintiff's inability to cross-examine the inspector.  Even if the identity of the OSHA was known, 29 C.F.R. § 2.22 generally prohibits DOL employees (including OSHA investigators) from testifying at trial unless approved by the Deputy Solicitor of Labor, so Plaintiff will likely not be able to cross-examine the OSHA Investigator, as was the case in *Hines*.  "While the inability to cross-examine the investigator cannot *per se* invalidate the report since Rule 803(8) does not depend on the availability of the declarant, it is nonetheless a proper factor to take into consideration when deciding trustworthiness."  *Hines v. Brandon Steel Decks, Inc.*, 886 F.2d 299, 303 (11th Cir. 1989) (citing *Wilson v. Attaway*, 757 F.2d 1227, 1245 (11th Cir. 1985) (excluding reporting for variety of reasons, including failure to afford possibility of cross-examination).

[6] *See United States v. Tran Trong Cuong*, 18 F.3d 1132, 1143-44 (4th Cir. 1994) (holding inadmissible information does not come into evidence just because it has been used by the expert in reaching opinion); *Marsee v. U.S. Tobacco Co.,* 866 F.2d 319, 323 (10th Cir.1989) (excluding medical expert's testimony of conversations with other physicians regarding cases on which expert relied); *Bryan v. John Bean Div. of FMC Corp.,* 566 F.2d 541, 544-47 (5th Cir.1978) (excluded hearsay evidence of opinions of non-testifying experts contained in two reports used by testifying expert in reaching his conclusion).

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

potential prejudice is *substantially outweighed* by the probative value." *Turner v. Burlington N. Santa Fe R. Co.*, 338 F.3d 1058, 1062 (9th Cir. 2003) (emphasis in original); *see also McDevitt v. Guenther*, 522 F. Supp. 2d 1272, 1294 (D. Haw. 2007) (expert's "recitation of otherwise inadmissible facts contained in [a] report are not admissible under Rule 703").  Here, given the untrustworthiness of the OSHA "investigation" and the inability of Plaintiff to cross-examine the OSHA investigator at trial, Plaintiff would be substantially and unfairly prejudiced if G Shipping was permitted to make hearsay references to the flawed OSHA investigation before the jury through lay or expert witnesses.  Fed. R. Evid. 403, 703.  The obvious risk is that the jury might give undue deference to the conclusions of OSHA, rather than fairly evaluating all the evidence Plaintiff has marshaled.  The Court should thus exclude all references to the OSHA investigation.

**4.      Motion to Exclude Seattle Police Department File and References Thereto**

This motion is agreed to by the parties.  *See* Wilner Decl. ¶ 3 & Ex. A.

**5.      Motion to Exclude Evidence or Argument on Contributory and Comparative Fault, Assumption of Risk, and Co-Worker Negligence Defenses**

G Shipping agrees to this motion—except as it relates to comparative fault.  *See* Wilner Decl. ¶ 3 & Ex. A.  G Shipping, by not only opposing this motion but also by asserting comparative fault in its pretrial statement, is attempting to resurrect a defense this Court has already rejected as a matter of law.[7]  The fourth affirmative defense in G-Shipping's answer expressly asserted "comparative fault."  Dkt. 29 at 4.  Plaintiff argued on summary judgment that "G Shipping's failure to secure payment of LHWCA compensation precludes it from asserting these affirmative defenses [including #4]," Dkt. 69 at 24, and G Shipping **agreed** a comparative fault defense was only available **if** the Court held Ms. Hawkins was **not** a harbor worker:

---

[7] Notwithstanding the Court's order striking the defense, G Shipping continues to list comparative fault in its pretrial statement as a defense.  *See* Wilner Decl. ¶ 3 & Ex. A.

PLAINTIFF'S MOTIONS IN LIMINE - 12
No. C12-512 RSM

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45

> So, to the extent that plaintiff's decedent, Lia Hawkins, may be found to have been a
> crew member or non-harbor worker at the time of her death, affirmative defenses #4,
> #5, #6, #7 and #8 are all proper and therefore not subject to dismissal.

Dkt. 73 at 16.  Yet that is precisely what the Court held.  The Court determined Ms. Hawkins was

a harbor worker, and thus struck G Shipping's comparative fault defense because it was "legally

insufficient based on the Court's finding that 33 U.S.C. 905(a) applies in this case." Dkt. 84 at 9.  G

Shipping has already missed the 14-day deadline for filing a motion for reconsideration.  LCR 7(h).

In light of the parties' previous summary judgment briefing and the Court's Order, the

Court should exclude all evidence, argument, or suggestion that Ms. Hawkins was somehow at

fault for her death.  Such evidence has no probative value or relevance in light of the Court's

Order and 33 U.S.C. § 905(a), and G Shipping should not be allowed to turn these motions in

limine or the pretrial order process into an untimely motion for reconsideration.  *See* Fed. R.

Evid. 401-402; LCR 7(h).

**6.      Motion to Exclude Toxicology Report and Any Evidence of Impairment**

This motion is agreed to by the parties.  *See* Wilner Decl. ¶ 3 & Ex. A.

**7.      Motion to Exclude Testimony of Defense Expert Capt. R. Russell Johnson**

G Shipping has identified Capt. R. Russell Johnson—a maritime safety expert—as a

defense rebuttal expert who will testify at trial.  Although Capt. Johnson's training and

experience may well have qualified him to opine on the safety hazards presented by the manner

in which scrap metal and other debris was being disposed of from the SAHARA at the time of

Ms. Hawkins' death (about which Plaintiff's two safety experts will testify), that is **not** what he

intends to testify about.  Rather, as indicated by G Shipping's expert disclosure, the thrust of

Capt. Johnson's intended testimony is that because there were no eye-witnesses to Ms. Hawkins'

fall, it is "total speculation" whether Ms. Hawkins was engaged in the disposal of debris from the

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45

fourth-level deck of the SAHARA when she fell overboard, and that the opinions of Plaintiff's

safety experts about the fall hazard presented by the debris disposal procedure are therefore

"without factual foundation."  Wilner Decl., Ex. J at 2.[8]  In support of this purported **factual**

**opinion**, and as virtually the exclusive basis thereof, Capt. Johnson simply relies upon the

untrustworthy and inadmissible OSHA "inspection" report (discussed above):

> I must concur with the OSHA report that "the circumstances surrounding the
> victim's disappearance were unknown, and there was no evidence that indicated
> there was an existing safety hazard present in the time period when the incident
> may have happened."

*Id.* at 3.

Capt. Johnson's proposed expert rebuttal testimony should be excluded.  It is not an

expert opinion that will help the jury understand the evidence or determine any factual issue, as

Rule 702(a) requires.  Whether Ms. Hawkins was engaged in the disposal of scrap metal from the

SAHARA when she fell overboard is a central **factual** issue for the jury to determine in this case.

As explained in Plaintiff's Motion for Partial Summary Judgment (Dkt. 69), there is substantial

direct and circumstantial evidence to support a jury determination that Ms. Hawkins was indeed

engaged in scrap metal disposal when she fell overboard through an unprotected gap in the

guardrail on the fourth level of the vessel.  The jury does not need Capt. Johnson's help to

evaluate this evidence to make that determination, because it is well-within the common

knowledge and experience of ordinary lay people.  Capt. Johnson's "opinion" will not help the

jury understand the evidence or resolve the factual issue of how Ms. Hawkins met her demise.

Thus, Capt. Johnson's "opinion" does not satisfy the first criteria for admissible expert testimony

---

[8]  In deposition, Capt. Johnson described the "gist" of his rebuttal opinion as follows: "So there was no
safety violations found [by OSHA].  There was nobody that saw her fall overboard.  So there's no witness to what
she was doing or that the area she was doing it in was unsafe."  Wilner Decl., Ex. H at 45:22-46:3.

PLAINTIFF'S MOTIONS IN LIMINE - 14
No. C12-512 RSM

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

under Rule 702(a).  *See Maffei v. N. Ins. Co. of New York*, 12 F.3d 892, 897 (9th Cir. 1993) (experts must testify "beyond the common knowledge of the average layman"); *United States v. Gwaltney*, 790 F.2d 1378, 1381 (9th Cir.1986) (experts must provide "appreciable help").

Capt. Johnson's opinion that it is "total speculation" how Ms. Hawkins met her demise should also be excluded because it not "based on sufficient facts or data," is not "the product of reliable principles and methods," and is not a product of Capt. Johnson's application of any "principles and methods to the facts of the case," as Rule 702(b) – (d) requires.  Although Capt. Johnson has been involved in investigating over 100 maritime accidents and injuries in his career, he acknowledges that he "wasn't asked to come to a conclusion on what caused [Ms. Hawkins'] death" and that he "wasn't asked to do an investigation" in this case.  Wilner Decl., Ex. H at 21:18-22:1, 83:24-84:1.  Rather, Capt. Johnson was asked only to "review the reports and the professional witness reports [of Plaintiff's safety experts] and provide a rebuttal based on the facts I had in front of me."  *Id.* at 84:1-4.

Ultimately, Capt. Johnson merely adopts the conclusions in the flawed OSHA report as his own.  Although he was provided with G Shipping's report to the Coast Guard (discussed above), Capt. Johnson appears to have entirely disregarded that report and instead relies **exclusively** on the inadmissible OSHA investigative report (discussed above) in reaching his conclusion that the "the circumstances surrounding the victim's disappearance were unknown, and there was no evidence that indicated there was an existing safety hazard present in the time period when the incident may have happened."  *Id.*, Ex. J at 3.  This is a patently insufficient basis under Rule 702(b) – (d) for Capt. Johnson to discount as "total speculation" the conclusion that Ms. Hawkins was engaged in the disposal of scrap metal from the SAHARA when she fell

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

overboard, and such an opinion reflects no application of any reliable "principles and methods" within Capt. Johnson's expertise as a safety expert.  *See, e.g., Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir.1987) ("If an opinion is fundamentally unsupported, then it offers no expert assistance to the jury.  Furthermore, its lack of reliable support may render it more prejudicial than probative, making it inadmissible."); *see also United States v. Barnard*, 490 F.2d 907, 912–13 (9th Cir.1973) (expert testimony that merely vouches for other evidence is inadmissible; it provides no appreciable help but has the certainty of substantial prejudices, and it interferes with the role of the jury.).

Finally, because the OSHA report on which Capt. Johnson is primarily relying is untrustworthy and inadmissible, as discussed above, Rules 403 and 703 preclude disclosure of the OSHA report through Capt. Johnson's testimony unless its "probative value in helping the jury evaluate the opinion substantially outweighs [its] prejudicial effect."  Fed. R. Evid. 703. That is clearly not the case here.  As discussed above, allowing the jury to hear about the untrustworthy OSHA report as the purported basis for Capt. Johnson's "opinion" would be extremely prejudicial, and that extremely flawed report simply has no probative value here.

### 8.     Motion to Exclude Alleged DUI or Criminal Acts of Ms. Hawkins

According to G Shipping's pretrial statement, it seeks to offer as evidence documents regarding a DUI **charge** against Ms. Hawkins.  Wilner Decl., Ex. K.  The charge was dismissed. *Id.*, Ex. L.  Ms. Hawkins' case never went to trial, and she was never convicted.  *Id.*  We believe G Shipping may also try to question witnesses about occasional marijuana and alcohol use by Ms. Hawkins.  Plaintiff requests that the Court prohibit any such evidence or questioning relating to the DUI charge, and alleged alcohol and marijuana use.

The evidence cannot be used to support an affirmative defense because it falls squarely within the Court's Order on Partial Summary Judgment Motions.  Dkt. 84; Fed. R. Evid. 401-402.  Nor is the evidence admissible under Rule 405 to show character.  Although the parents' loss of society claim and the lost future earnings claim may arguably make extraordinary character flaws of Ms. Hawkins relevant, the evidence here—occasional marijuana use and a DUI charge—is far too attenuated to be admissible.  *St. Clair v. E. Air Lines, Inc*., 279 F.2d 119, 121 (2d Cir. 1960).  All the evidence shows is that Ms. Hawkins engaged in the same behaviors as thousands of other young people.  It is too weak to show her future earnings, life expectancy, or family relationship would be impacted, but it does have the certainty of substantial prejudice, and should be excluded.  Fed. R. Evid. 403; *Meller v. Heil Co.,* 745 F.2d 1297, 1303 (10th Cir. 1984) (possession of drug paraphernalia found in personal possession of plaintiff's decedent at scene of accident was properly excluded under Rule 403, despite claim by defendant that such evidence was probative of decedent's life expectancy); *Harless v. Boyle-Midway Div., Am. Home Products*, 594 F.2d 1051, 1058 (5th Cir. 1979) (evidence that boy had smoked marijuana was highly prejudicial to wrongful death and survival claim and should have been excluded).

### 9.     Motion to Exclude Defense Expressions of Sympathy that Post-Date Ms. Hawkins' Death

This motion is agreed to by the parties.  *See* Wilner Decl. ¶ 3 & Ex. A.

### 10.     Motion to Exclude Evidence of or References to Payment of Funeral Expenses

This motion is agreed to by the parties.  *See* Wilner Decl. ¶ 3 & Ex. A.

### 11.     Motion to Exclude Witnesses and Documents Not Previously Disclosed

This motion is agreed to by the parties.  *See* Wilner Decl. ¶ 3 & Ex. A.

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

**12.      Motion to Exclude References to Settlement Negotiations**

This motion is agreed to by the parties.  *See* Wilner Decl. ¶ 3 & Ex. A.

**13.      Motion to Exclude References to the Parties' Motions in Limine**

This motion is agreed to by the parties.  *See* Wilner Decl. ¶ 3 & Ex. A.

**III.      CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court grant her motions

in limine.  A proposed order in this regard is submitted herewith.

DATED this 14th day of March, 2013.

> **GORDON TILDEN THOMAS & CORDELL LLP**
> Attorneys for Plaintiff
>
> By  *s/Mark Wilner*
> Mark Wilner, WSBA #31550
> 1001 Fourth Avenue, Suite 4000
> Seattle, Washington 98154
> Telephone: (206) 467-6477
> Facsimile:     (206) 467-6292
> Email:  mwilner@gordontilden.com
>
> **MUNDT MacGREGOR L.L.P.**
> Attorneys for Plaintiff
>
> By  *s/J.D. Stahl*
> J.D. Stahl, WSBA #14113
> 271 Wyatt Way NE, Ste 106
> Bainbridge Island, WA 98110
> Telephone: (206) 624-5950
> Facsimile:     (206) 624-5469
> Email:  jdstahl@mundtmac.com

PLAINTIFF'S MOTIONS IN LIMINE - 18
No. C12-512 RSM

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45

## CERTIFICATE OF SERVICE

I hereby certify that on March 14, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following.

Counsel for Defendant G Shipping Ltd.

Kevin Beauchamp Smith
4714 Ballard Avenue NW, PMB 194
Seattle, WA 98107-4580
P:  206-781-1657
F:  888-435-0145
Email:  kbeaus@ix.netcom.com

Joseph J. Perrone
Bennett Guiliano McDonnell & Perrone, LLP
494 Eighth Avenue, 7th Floor
New York, NY 10001
T:  646-328-0120
Email:  jperrone@bgmplaw.com
*Admitted Pro Hac Vice

Counsel for Plaintiff-in-Intervention Lunde Marine Electronics, Inc.

Robert A. Green
Law Offices of Robert A. Green, Inc. P.S.
1900 West Nickerson Street
Fishermen's Center, Suite 203
Seattle, WA 98119
P:  206-285-9481
F:  206-284-4525
Email:  Robert@rgreenlaw.com

*s/Mark Wilner*
Mark Wilner, WSBA #31550
Gordon Tilden Thomas & Cordell LLP

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292